AF Approval *TCK for SCN*                                   Chief Approval *CCB*

## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO. 8:20-cr-238-JSM-SPF

SANDU BORIS DIACONU

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Roger B. Handberg, United States Attorney for the Middle District of Florida,

and the defendant, Sandu Boris Diaconu, and the attorney for the defendant,

Adam Allen, mutually agree as follows:

### A.  Particularized Terms

1.  Counts Pleading To

The defendant shall enter a plea of guilty to Count One and

Count Four of the Indictment. Count One charges the defendant with

conspiracy to commit computer and access device fraud, in violation of 18

U.S.C. § 371. Count Four charges the defendant with possession of 15 or more

unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3).

2.  Maximum Penalties

Count One carries a maximum sentence of 5 years in prison,

Count Four carries a maximum sentence of 10 years in prison. Each count

Defendant's Initials _Diaconu_

carries a fine of up to $250,000.00, or twice the gross gain caused by the offense, or twice the gross loss caused by the offense, whichever is greater, a term of supervised release of not more than three years, and a special assessment of $100 per felony count for individuals. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

    3.    <u>Elements of the Offenses</u>

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

| | |
|---|---|
| First: | two or more persons in some way agreed to try to accomplish a shared and unlawful plan; |
| Second: | the Defendant knew the unlawful purpose of the plan and willfully joined in it; |
| Third: | during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the indictment; and |
| Four: | the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy. |

The elements of Count Four are:

| | |
|---|---|
| <u>First</u>: | The defendant knowingly possessed fifteen or more access devices; |

Defendant's Initials _Diaconu_      2

Second:     The access devices were counterfeit or unauthorized;

Third:      The defendant possessed those devices with the intent to
            defraud; and

Fourth:     The defendant's conduct affected interstate or foreign
            commerce.

4.    Counts Dismissed

At the time of sentencing, the remaining counts against the

defendant, Counts Two, Three, Five, and Six, will be dismissed pursuant to

Fed. R. Crim. P. 11(c)(1)(A).

5.    No Further Charges

If the Court accepts this plea agreement, the United States

Attorney's Office for the Middle District of Florida agrees not to charge

defendant with committing any other federal criminal offenses known to the

United States Attorney's Office at the time of the execution of this agreement,

related to the conduct giving rise to this plea agreement.

6.    Adjusted Offense Level - Estimate Only

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States,

based on the information now available to it, estimates that the defendant's

adjusted offense level is 23, as determined below:

| Guideline | Description | Levels |
| --- | --- | --- |
| § 2B1.1(a)(2) | Base Offense | 6 |

Defendant's Initials _Dioconu_          3

| § 2B1.1(b)(1)(H) | Specific Offense Characteristic: Loss | +14[1] |
|---|---|---|
| § 2B1.1(b)(2)(A)(i) | Specific Offense Characteristic: More than 10 Victims | +2 |
| § 2B1.1(b)(10)(b) | Specific Offense Characteristic: Outside the U.S. | +2 |
| § 2B1.1(b)(11)(B)(i) | Specific Offense Characteristic: Access Devices | +2 |
| § 3E1.1(a) & (b) | Acceptance of Responsibility | -3 |
| | | |
| Total Adjusted Offense Level | | 23 |

The defendant understands that this estimate is not binding on the court or the United States, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

6.    Low End

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court. The defendant understands that this

---

[1] This enhancement is based upon the amount that the site earned of $1,046,361.65, which is detailed in the Factual Basis below. The parties jointly agree that this is the provable loss figure in this case.

Defendant's Initials  Diaconu          4

recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

8.   Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot

Defendant's Initials ⟨Diaconu⟩          5

and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9.     Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as

Defendant's Initials _Discony_          6

"substantial assistance" in accordance with the policy of the United States

Attorney for the Middle District of Florida, warranting the filing of a motion

for a reduction of sentence within one year of the imposition of sentence

pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands

that the determination as to whether "substantial assistance" has been

provided or what type of motion related thereto will be filed, if any, rests

solely with the United States Attorney for the Middle District of Florida, and

the defendant agrees that defendant cannot and will not challenge that

determination, whether by appeal, collateral attack, or otherwise.

10.　Cooperation - Responsibilities of Parties

a.　The government will make known to the Court and other

relevant authorities the nature and extent of defendant's cooperation and any

other mitigating circumstances indicative of the defendant's rehabilitative

intent by assuming the fundamental civic duty of reporting crime. However,

the defendant understands that the government can make no representation

that the Court will impose a lesser sentence solely on account of, or in

consideration of, such cooperation.

b.　It is understood that should the defendant knowingly

provide incomplete or untruthful testimony, statements, or information

pursuant to this agreement, or should the defendant falsely implicate or

Defendant's Initials _____　　7

incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)     The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)     The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recission of any order

Defendant's Initials ⟨Dioconu⟩                    8

dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the

Defendant's Initials _Diocouu_          9

United States, the United States may move the Court to declare this entire plea agreement null and void.

11.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §§ 982(a)(2)(B), 1029(c)(1)(C), and 1030(i), whether in the possession or control of the United States, the defendant or defendant's nominees.

Additionally, the defendant agrees that he no longer maintains the registration for any domains associated with the Marketplace (as defined in the Facts, as set forth below), including E-Root.co.uk, E-Root.cc, E-Root.eu, and Onrdp.net, which he agrees were properly seized in or about 2020 and/or 2021, and further relinquishes any interest or claim he may have to these domains, including any right to re-activate or re-register these domains.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea

Defendant's Initials _Discoru_          10

Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their

Defendant's Initials _Diocanu_                    11

connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG §1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

Defendant's Initials ⟨Diacoua⟩           12

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

### 7. Removal - Consent and Cooperation

The defendant agrees and consents to removal from the United States following completion of the defendant's sentence and agrees to waive the defendant's rights to any and all forms of relief from removal or exclusion. The defendant further agrees to abandon any pending applications for relief from removal or exclusion, and to cooperate with the Department of Homeland Security during removal proceedings.

## B. Standard Terms and Conditions

### 1. Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663A, for all offenses

Defendant's Initials ⟨Diocony⟩        13

described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing.

The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the

Defendant's Initials _Vioconu_          14

conditions of release, the defendant would be subject to a further term of imprisonment.

    3.    Immigration Consequences of Pleading Guilty

        The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

    4.    Sentencing Information

        The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the counts to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

    5.    Financial Disclosures

        Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United

Defendant's Initials _Piecenn_      15

States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

Defendant's Initials _Diocown_             16

6.      Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.      Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly

Defendant's Initials _____                    17

waives the right to appeal defendant's sentence on any ground, including the
ground that the Court erred in determining the applicable guidelines range
pursuant to the United States Sentencing Guidelines, except (a) the ground
that the sentence exceeds the defendant's applicable guidelines range <u>as</u>
<u>determined by the Court</u> pursuant to the United States Sentencing Guidelines;
(b) the ground that the sentence exceeds the statutory maximum penalty; or (c)
the ground that the sentence violates the Eighth Amendment to the
Constitution; provided, however, that if the government exercises its right to
appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the
defendant is released from his waiver and may appeal the sentence as
authorized by 18 U.S.C. § 3742(a).

    8.    <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the
Office of the United States Attorney for the Middle District of Florida and
cannot bind other federal, state, or local prosecuting authorities, although this
office will bring defendant's cooperation, if any, to the attention of other
prosecuting officers or others, if requested.

Defendant's Initials _Procanu_      18

9.    Filing of Agreement

     This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

     The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the

Defendant's Initials _Dcoconu_      19

attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

## FACTS

Beginning at least as early as January 22, 2015, and continuing until at least February 27, 2020, Sandu Boris DIACONU, a/k/a "utmsandu," a/k/a "sandushell," a/k/a "rootarhive," a/k/a "WinD3str0y"

Defendant's Initials _Diaconu_          20

("DIACONU") knowingly and willfully conspired with his codefendant and others to develop and use a publicly accessible website that was comprised of several domains (the "Marketplace"). The Marketplace was an e-commerce storefront that DIACONU and his co-conspirators used to facilitate the unauthorized sale of login credentials (i.e., usernames and passwords) for compromised computers and servers (hereinafter, "compromised servers") located around the world. This included the unauthorized sale of credentials and servers belonging to United States citizens, including servers, entities, and individuals located in the Middle District of Florida. These credentials were then used to facilitate a wide range of illegal activity, such as ransomware attacks, fraudulent wire transfers, and tax fraud. Between December 18, 2016, and February 6, 2020, customers paid approximately $1,046,361.65 to the Marketplace to purchase these compromised credentials.

"Remote Desktop Protocol" or RDP credentials were one common form of compromised credentials sold by the Marketplace. When used legitimately, RDP allowed a user to access his or her computer remotely, such as an employee working on the employer's network from the employee's home. When used without authorization, RDP could allow a cybercriminal to compromise and take control of a victim's computer and server network.

Defendant's Initials _Diaconu_                    21

These compromised RDP credentials sold by the Marketplace constituted "unauthorized access devices" as defined by 18 U.S.C. § 1029(e)(3).

Although it conducted no legitimate business, the Marketplace looked like a traditional e-commerce website and functioned like a legitimate business would. The Marketplace touted the fact that it sold valid login credentials to compromised servers, offered an exchange and warranty policy, and offered high-quality customer service. Customers could search for login credentials on the Marketplace based on a variety of criteria, including: the country, region, or zip code of the compromised server; the operating system of the compromised server; the internet service provider of the compromised server; the purchase price of the credentials; and whether the compromised server had certain open ports. The Marketplace also provided avenues for customer support. DIACONU served as an administrator for the Marketplace, and his contact information was listed on the Marketplace website in connection with certain customer support functions.

As an administrator of the Marketplace, DIACONU maintained and oversaw the Marketplace. DIACONU and his coconspirators used wire transmissions, including emails, electronic data transfers, and web-based communications, as well as other instrumentalities of interstate and foreign commerce, to facilitate their operation and administration of the Marketplace.

Defendant's Initials _Diaconu_                22

DIACONU and his fellow administrators also created and maintained records for customers, including usernames, registration dates, email addresses, purchases, Perfect Money balances, last login dates, and the IP address of buyers at the time of last login.

Perfect Money, which is a service that allowed users to make online payments and financial transfers, was used for all purchases on the Marketplace. The Marketplace also operated and advertised a sister website that allowed buyers to convert Bitcoin into Perfect Money. By requiring customers to use Perfect Money, the Marketplace made it harder for government agencies to detect and track illicit transactions.

On January 22, 2015, the same day that the Marketplace was created, DIACONU registered an administrator account with the Marketplace. On December 10, 2016, DIACONU registered the moniker "WinD3str0y" for his administrator account. As an administrator, DIACONU communicated with customers concerning purchases and customer service issues. For example, on January 18, 2017, DIACONU received a buyer's email regarding non-working RDP access and requesting a refund.

On August 17, 2018, DIACONU's codefendant registered a new domain for the Marketplace with a domain name registrar. That same day,

Defendant's Initials _Diaconu_                23

DIACONU made a payment to the domain name registrar for the
Marketplace's domain. On or about August 26, 2018, DIACONU emailed
approximately 30 individuals addressing the transitioning of the Marketplace
to a new domain, explaining that there were "technical problems" with the old
domain and directing the customers to the new domain. On or about March
19, 2019, DIACONU logged into the Marketplace using his administrator
account.

The Marketplace frequently sold credentials belonging to servers
located within the Middle District of Florida. For example, on January 17,
2017, the Marketplace listed for sale unauthorized RDP credentials for 26
servers within the Middle District of Florida, 17 of which were sold that same
day.

On January 3, 2019, a conspirator exchanged customer support
messages with an undercover agent posing as a buyer of "Remote Desktop
Protocol" access for servers located in the Middle District of Florida. On
January 8, 2019, conspirators facilitated the sale of login credentials for
Victim-7's server on the Marketplace. Victim-7 was a business entity located in
Orlando, Florida.

Defendant's Initials ⟨Dioconu⟩          24

On July 23, 2019, conspirators facilitated the sale of login credentials for Victim-3's server on the Marketplace. Victim-3 was a medical practice and business entity located in Tampa, Florida.

That same day, conspirators facilitated the sale of login credentials for Victim-4's server on the Marketplace. Victim-4 was a business entity located in Tampa, Florida.

On August 14, 2019, conspirators facilitated the sale of login credentials for Victim-5's server on the Marketplace. Victim-5 was a business entity located in Tampa, Florida.

On August 15, 2019, conspirators facilitated the sale of login credentials for Victim-6's server on the Marketplace. Victim-6 was a local public agency located in Tampa, Florida.

From 2016 through 2020, the Marketplace earned $1,046,361.65 from the sale of credentials.

12.   Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials _Dioconu_                    25

13. Certification

The defendant and defendant's counsel certify that this plea

agreement has been read in its entirety by (or has been read to) the defendant

and that defendant fully understands its terms.

DATED this _6_ day of _November_ 2023.

ROGER B. HANDBERG
United States Attorney

Sandu Boris Diaconu
Defendant

Rachel K. Jones
Assistant United States Attorney

Adam Allen
Assistant Federal Public Defender
Attorney for Defendant

Rachelle DesVaux Bedke
Assistant United States Attorney
Chief, Economic Crimes Section

26